UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Darrick Newsome, Jr.,            Case No. 3:20-cv-2630

       Plaintiff,

   v.            MEMORANDUM OPINION
                          AND ORDER

Shawn Wakefield, *et al.*,

       Defendants.

## I. INTRODUCTION

*Pro se* plaintiff Darrick Newsome, Jr., an inmate at the Allen Oakwood Correctional Institution ("AOCI") in Lima, Ohio, filed suit against Defendants AOCI Investigator Shawn Wakefield, Chairman of the Rules Infraction Board ("RIB") Michael Ledesma, Case Manager Ms. Wilson, Assistant Warden Jody Factor, Restrictive Housing Sgt. Van Horn, and 3-House Unit Manager Ida Collier, alleging due process and equal protection violations and retaliation in connection with prison discipline imposed on him by the AOCI RIB in 2020. (Doc. No. 1). I previously dismissed Newsome's due process and equal protection claims pursuant to 28 U.S.C. §1915(e)(2)(B), for failing to state a claim upon which relief may be granted. (Doc. No. 6).

The State of Ohio subsequently filed a motion to dismiss Newsome's remaining retaliation claim on behalf of all Defendants. (Doc. No. 9). Newsome filed a brief in response, (Doc. No. 16), and Defendants filed a brief in reply. (Doc. No. 17). For the reasons stated below, I grant Defendants' motion.

## II. BACKGROUND

I previously summarized the allegations in the Complaint as follows:

Newsome alleges that on September 3, 2020, he and his cell mate were escorted to Restrictive Housing and placed under investigation after Corrections Officer Vance found two cell phones in their cell. ([Doc. No. 1] at 3, ¶¶ 10-12.) On September 9, 2020, the RIB found Newsome not guilty of possessing the phone as Officer Vance "could not positively identify" him as possessing it. (*Id.*, ¶ 14.)

Newsome complains that despite being found not guilty, he was "still ordered to remain in Restrictive Housing under investigation for the cell phone, per the order of Shawn Wakefield." (*Id.* at ¶ 15.) He sent a kite to Defendant Factor on September 15, 2020, complaining about this and asking her why he remained in restrictive housing when he was found not guilty of possessing the phone. She responded that he remained in restrictive housing pending Wakefield's further investigation of the information contained on the phone. (*Id.* at 3-4, ¶¶ 16-17.) According to Newsome, the continued investigation should not have kept him in restrictive housing.

Newsome was issued a conduct report on September 24, 2020, based on information extracted from the phone. The conduct report charged him with multiple rule violations and stated that information on the phone identified the phone as his and indicated he was involved in marijuana transactions. (*Id.* at 5-6, ¶ 21.)

The RIB found Newsome guilty of the rule violations after a hearing on October 1, 2020. He was sanctioned with "30 days LC time, with 28 days credit time served" and ordered to receive a security review. (*Id.* at 7, ¶ 25.)

Newsome alleges that Defendants Wakefield, Van Horn, Ledesma, Wilson, and Factor all violated his due process and equal protection rights by finding him guilty of the rule violations because, he contends, the conduct report was "false." (*Id.* at 8-9, ¶¶ 27-30.) According to Newsome, the conduct report incorrectly stated the time of the offense as 10:00 a.m., but he contends no shakedown of his cell occurred at that time.

Newsome further contends the conduct report was issued in retaliation for his September 15, 2020 kite to Factor. (*Id.* at 4, ¶ 19; at 6, ¶ 22.)

In addition, Newsome complains that he was held in restrictive housing pending his security review and that there were procedural violations in connection with that review. He alleges he was given a security review by Defendant Wilson on October 27, 2020, and that "she increased his points and recommended a level 3 institution increase." He was subsequently moved to a cell in a 3A housing Unit and subjected to various restrictions and privilege limitations. (*Id.* at 12-13, ¶¶ 35-37.) Newsome complains that prior to his review, Defendants Ledesma and Van Horn moved him to the COVID-19 quarantine area. He contends this denied "him equal protection of the law because no inmates without COVID-19 should've been housed in the

quarantine area" and was done in "response to his complaint about remaining in restrictive housing."  (*Id.* at 11, ¶ 33.)

Newsome further alleges he was given a second security review on November 6, 2020, because of "procedural error" in his first review.  He contends Wilson "forged [his] signature on an October 19, 2020 security review and in an attempt to cover it up . . . gave [him] a security review on 10-27-2020."  He contends her actions were taken in "retaliation" for his filing complaints about the October 1, 2020 RI[B] decision.  (*Id.* at 14-15, ¶ 39.)

(Doc. No. 6 at 1-3).

### III.    DISCUSSION

#### A.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants first argue I should dismiss Newsome's retaliation claim because he failed to exhaust his administrative remedies before initiating this litigation.  (Doc. No. 9 at 4-6).  They contend Newsome did not complete all three steps of the grievance procedure as set forth in Ohio Administrative Code § 5120-9-31.

The Prison Litigation Reform Act requires inmates like Newsome to exhaust all available administrative remedies before filing a civil rights lawsuit in federal court.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citation omitted).  The failure to exhaust is an affirmative defense, regarding which a defendant carries the burden to prove, by a preponderance of the evidence, that the plaintiff failed to exhaust the plaintiff's administrative remedies.  *See, e.g., Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022); *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  "Because the Defendants bear the burden of proof on exhaustion, they bear an 'initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion' and 'that no reasonable jury would be free to disbelieve it.'"  *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (alterations added by *Does*)).

3

Defendants have not presented any evidence showing Newsome failed to exhaust his administrative remedies. Therefore, they have not met their burden of proof. I deny their motion on this basis.

In their reply brief, Defendants cite to Ohio Revised Code § 2969.26(A) and argue Newsome's complaint must be dismissed because he did not include an affidavit attesting to certain facts about his grievances or attach any written decisions. (Doc. No. 17 at 2-3). But Newsome brings federal claims in federal court. Defendants fail to explain how Ohio law creates pleading requirements for plaintiffs in this court. *See, e.g., Young v. Mulvaine*, 3:18-cv-2807, 2022 WL 875253, at *5 (N.D. Ohio Mar. 24, 2022) (holding "summary judgment cannot be granted based on non-compliance" with § 2969.26); *Armstead v. Baldwin*, No. 2:19-CV-4857, 2020 WL 1694850, at *2 (S.D. Ohio Apr. 7, 2020) (same). I deny Defendants' motion on this basis as well.

### B.  RETALIATION

To establish a First Amendment retaliation claim, Newsome must show: "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)) (alteration in *Hill*).

Defendants also argue Newsome's retaliation claim must be dismissed because he fails to state a plausible claim for relief. They argue the allegations in the complaint fail to establish any of these required elements. (Doc. No. 9 at 6-9).

Newsome did not respond to Defendants' arguments, arguing only that I previously ruled he could move forward with his retaliation claim. (Doc. No. 16 at 1). Newsome reads too much into my earlier decision. In conducting the initial screening of Newsome's complaint as required under

4

28 U.S.C. § 1915(e)(2)(B), I concluded only that *sua sponte* dismissal was not appropriate because I could not "conclude on the basis of his complaint alone that he cannot demonstrate all of the required elements of retaliation as to some of the Defendants." (Doc. No. 6 at 7). Nothing in my ruling precluded the Defendants from pursuing the dismissal of this claim in the future. Therefore, I deem Newsome to have waived opposition to this portion of Defendants' motion. *See, e.g., Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 566 (6th Cir. 2017) (citing *Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328 (6th Cir. 2008)); *Scott v. Tennessee*, 878 F.2d 382, *2 (6th Cir. 1989) (unpublished table decision).

While Newsome alleges he suffered a variety of adverse actions, he offers only "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citation and internal quotation marks omitted). He alleges, for example, that Wakefield issued a conduct report "in retaliation" for a kite Newsome sent to Factor, and that he was punitively held in a Covid-19 quarantine area "in retaliation" for filing complaints. (Doc. No. 1 at 6, 12-13).

In some circumstances, "[c]ircumstantial evidence, like the timing of events, may be sufficient to plead a causal connection between protected conduct and an adverse action." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). But the timing of Newsome's complaints and the disciplinary action he received does not establish a causal connection between those two things. Newsome already was under investigation for violating prison rules when he sent the kite to Factor. (*See* Doc. No. 1 at 4-5). "An inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 F. App'x 520, 524–25 (6th Cir. 2002) (citation and internal quotation marks omitted). *See also Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (affirming dismissal of plaintiff's retaliation claim as without merit where plaintiff's "claims rel[ied]

5

solely on the assumption that because he filed grievances against the defendants and some[]time later they took actions against him, they had improper motives").[1]

Newsome has not supported his "allegations of retaliatory animus with 'specific, nonconclusory allegations . . . that could support a jury verdict at trial.'" *LaFountain v. Mikkelsen*, 478 F. App'x 989, 992 (6th Cir. 2012) (quoting *Thaddeus-X*, 175 F.3d at 399-400). Therefore, he fails to state a plausible claim for relief and I dismiss his claim pursuant to Rule 12(b)(6).

## V.  CONCLUSION

For the reasons stated above, I grant Defendants' motion and dismiss Plaintiff Darrick Newsome's First Amendment retaliation claim. (Doc. No. 9). I deny the remaining pending motions as moot. (Doc. Nos. 14, 18, and 22).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[1] Newsome appears to double-down on this strategy, alleging he "expects to be retaliated against by way of institutional transfer, assault[,] or the issuance of more false conduct reports, for filing this lawsuit." (Doc. No. 1 at 19).